LUEDKE, Respondent, vs. LUEDKE, Appellant.

*April 3—May 1, 1934.*

For the appellant there was a brief by *Olwell & Brady* and *William T. Gill,* all of Milwaukee, and oral argument by *Mr. Lawrence A. Olwell* and *Mr. Gill.*

For the respondent there was a brief by *Gold & McCann* and *Baumann & Scholl,* all of Milwaukee, and oral argument by *Ray T. McCann* and *Walter L. Gold.*

FAIRCHILD, J.    Appellant's income has been very materially reduced under what it was when alimony was fixed in the judgment.    The facts are fairly summarized by the learned trial judge as follows:

"While during the past year and a half defendant's income has been 'lean,' it is not contended that his estate has been materially or permanently diminished or impaired."

We are concerned first with whether the trial court's refusal to modify the judgment by reducing the amount of

alimony amounted to an abuse of discretion. The figures show that appellant's gross income in 1925 was $58,075.14; in 1932, $27,136.65; in 1933, estimated at $16,752.51. The use made by the appellant of the income included the payment of $12,000 annually to his wife, contributions to his daughter, who with her two small children, was dependent upon him for support, and his two sons, one of whom is in college. In opposition to the petition for reduction of the alimony, the respondent claims the expenditure of large sums of money by her for medical and hospital services, shows the condition of the appellant's estate, and alleges that respondent's general situation and condition is such that it is unjust to her to reduce the allowance fixed in the judgment of divorce.

The appellant occupies an important position with a large business house, and in order to hold the position and salary, it is necessary for him to acquit himself properly in the maintenance of a standard of conduct and appearance compatible therewith. His obligations to his wife may be said to be of the utmost importance, but in order to meet those obligations, he cannot ignore those which rest upon him with relation to his business of meeting in an acceptable manner those with whom he must come in contact. While his income must be apportioned so as to give her due protection, it can hardly be expected that all requirements other than those which relate to her are to be entirely lost sight of.

Alimony is a maintenance awarded by the court to the wife where the husband refuses voluntarily to support her, or, by his improper conduct, compels her to separate from him. It is not a portion of his estate to be assigned to her or to be sold at her pleasure, but a provision for her support. *Campbell v. Campbell,* 37 Wis. 206. It is not a penalty imposed for his misconduct, but is a provision for the wife to which the marital state entitles her. In determining upon

the amount to be set aside for this support, the husband's faculties, his income and estate, are to be given full consideration. The wife is not to be held down to a meager limit, nor is the husband to be deprived of an opportunity to live in a normal way and to protect and conserve his estate. The wife is to have, so far as the husband's combined faculties will warrant, enough to supply her wants in a manner befitting their station in life.

Were appellant and respondent living together, and were his income, as apparently it has been, reduced from upwards of $50,000 to $16,000, good judgment would suggest that they use less for their living expenses than they had been using until more prosperous days return, rather than force a sale on a declining market of income-producing property. Of course, they would then be managing their own affairs so as to serve the best interests of themselves and their children. The same considerations of economical and sound management are present, although the divided house presents some limitations in the situation before us as would exist were the husband and wife in mutual accord. Their inability to meet life and its incidents in the usual manner of husband and wife who are the father and mother of children, has resulted in placing some phases of their domestic affairs under the control of the court. The differences between them, their living apart, and the maintenance of separate establishments, do not alter the husband's duty to support the wife. It is equally true that it is the wife's duty to accept and live within such means as may fairly be allotted to her under a just arrangement and distribution of her husband's means, which at the same time allows for keeping the rest of the family on an acceptable plane of living.

The record discloses that when appellant's income was well over three times and nearly four times what it now is, that $12,000 per year was considered a fair and adequate allowance to respondent. The fact that his income has been

reduced to $16,000 and that the dependency of his children and grandchildren has increased the burden resting upon him, seems to call for a patient investigation into the facts, for, as has been suggested, the considerations and obligations growing out of their former cohabitation, including the present relation, limited and modified as their matrimonial status now is—his earnings—the yield from his investments—her need of adequate support and maintenance,—are not different from those they would themselves investigate and ponder over had their dispositions been such as to enable them to live within the relation they assumed at the time of their marriage.

Appellant and respondent lived apart for a number of years before respondent began the action for divorce. While they were living apart the husband furnished the wife with a home and $400 per month for her support, and in addition paid all doctors' bills, dentists' bills, taxes, coal bills, and repairs. There was no formal contract under which specific amounts to be paid were determined. The appellant did not contest the claims of respondent in the action for divorce from bed and board. The amount and terms fixing the alimony was decided upon by the court in a manner agreeable at the time to the parties and, in fact, agreed upon by the parties. The divorce is one from bed and board. The status of spouses has not been done away with; neither can remarry. She still has, subject to the limitations of the limited divorce, the rights, so far as property is concerned, of a wife. Both parties are in a measure affected by a common interest which binds them to accommodate themselves to obligations and conditions that attach to his estate and income. Their inability to adjust themselves to existing circumstances, so as to be able to live with each other and keep their family under one roof, has resulted in a supervision by the court of certain of their differences to the extent at least set up in the decree of divorce. The provision for separate

support and maintenance of the wife is subject to review. The learned trial judge said concerning this:

"The fact that the provision for alimony contained in the judgment was based solely, as is conceded, upon the stipulation of the parties, however, does not deprive the court of the power to modify the provisions in relation to alimony. Under certain circumstances it may well become the duty of the court to modify the judgment."

The character and standard of support to be furnished by the husband is such, giving due consideration to his means, as is reasonable and suitable. Modification of an allowance of alimony may be ordered upon proof of change of conditions substantial enough to warrant such action. A considerable reduction in the husband's income may amount to a cause for an order decreasing alimony. Where the change of financial condition was not wilfully brought about, and there is no claim or suggestion of fraud in this case, the application for modification must be determined on rules calculated to guide the fixing of an award at the time the case was tried and the judgment entered. Sec. 247.32, Stats.; *Haskell v. Haskell*, 119 Minn. 484, 138 N. W. 787; 2 Schouler, Marriage and Divorce (6th ed.), p. 1993, § 1831.

When the amount for support and maintenance of respondent was fixed in June, 1925, appellant had an income of $58,075.14. That has gone down until in 1933 it was estimated that it would not exceed $16,752.51. There is no question but that the entire estate of the husband may be subjected to the payment of maintenance for a wife. But where an ample income exists and the wife's interest in the estate is fixed by law, where there are children whose interests are to be considered, sufficient reason does not exist for forcing the husband to sell securities and diminish his estate in order to provide the wife with an allowance fixed when the income was upwards of three times its present extent.

The facts in this case not only warrant but require at this time a reduction of the allowance to the wife. The court below made no findings of fact because it was there concluded that—

"There should be no modification unless it appears that there has been a substantial and permanent diminution or impairment of the husband's estate and income. The fact alone that the husband's income has been for the time being decreased while his estate remains practically intact and not seriously impaired does not call for a modification of the judgment. Alimony should be based upon estate as well as income."

Much of the evidence offered by respondent to support her opposition to any reduction of the $12,000 allowed and necessitating a disposal by him of some of his capital (and to the exclusion of any fatherly assistance on his part to his daughter—their daughter—and their grandchildren) is not convincing. The decision of the trial court, we apprehend, was based upon the belief that the embarrassment of the appellant was temporary, and that some of his property might be sold or money borrowed to meet the requirements of the alimony order fixed in 1925.

As has been said, respondent is still the wife of the appellant. Should she outlive him she will share in the estate. Discretion would seem to dictate that all concerned live within the income so far as that is possible, still permitting the wife to maintain a standard of living suitable to her condition in life. If the estate can be maintained and she continue to live with the comfort befitting one in her station of life, she is not suffering an undue loss of daily comfort by accepting a reduction of alimony, and helping to conserve an estate which may be the source of her sustenance when alimony can no longer be paid. Her interest in the children doubtless prompts a willingness to do anything reasonable under the circumstances.

. In estimating the allowance of alimony there is no fixed standard. The matter is within sound judicial discretion. *Gauger v. Gauger,* 157 Wis. 630, 147 N. W. 1075; *Voegeli v. Voegeli,* 204 Wis. 363, 236 N. W. 123. It will be regulated by a number of circumstances that properly enter into its consideration. In addition to the financial circumstances of the parties, consideration should be given to their social standing and their general physical condition in reaching a decision as to the amount to be allowed. 1 R. C. L. p. 931, § 78. We are of the opinion, based upon the record now before us, that respondent's situation is such that there is no occasion to require the invasion of appellant's estate or principal, as would now be necessary if the alimony were continued at $1,000 a month. A reduction in the allowance may be arrived at which will make the sacrifice of estate unnecessary, and at the same time will maintain respondent in a dignified and comfortable manner, and afford some opportunity to the appellant, whatever his faults may be, to meet the requirements of his position, sustain himself, preserve his estate, and keep himself in a state of health and peace of mind that will tend at least to keep him fit for the duties of his business position, and to meet the responsibilities which he recognizes as his.

We hold that as a general rule, and especially in the absence of any emergency of health or other affecting circumstance, a husband who by his earnings and investments has an income sufficiently large to maintain his wife on a proper scale and standard of living, considering the amount of the estate and his earnings, may do so out of the income, in the case of a divorce from bed and board. In this case, the husband has given the wife a valuable home in which she lives, he has been paying for a number of years an annual allowance of $12,000, fixed when his earnings and the yield from his investments was some $58,000. The evidence shows that she can live with slight sacrifice on her part, for

a time at least, on considerably less than $12,000 per year. This does not affect her right to have further consideration of the matter when circumstances warrant it. The amount upon which we have determined for the time being is $7,500 per year, which will be payable in monthly instalments.

*By the Court.*—Order reversed, and cause remanded with directions to reduce the allowance for alimony to $625 per month from the date of the order appealed from.