VAN WYK, Respondent, v. VAN WYK, Appellant.†

Supreme Court

*No. 76–150. Argued October 30, 1978.—Decided November 28, 1978.*
(Also reported in 271 N.W.2d 860.)

† Motion for reconsideration denied, with costs, on January 30, 1979.

For the appellant there were briefs by *L. E. Sheehan* and *Moen, Sheehan & Meyer, Ltd.*, and oral argument by *Paul W. Henke, Jr.*, of La Crosse.

For the respondent there was a brief by *John H. Drew* and *Steele, Smyth, Klos & Flynn—Chartered,* and oral argument by *Mr. Drew.*

CONNOR T. HANSEN, J. The issues on appeal relate to the division of the estate, the award of alimony and the allowance of counsel fees and expenses on appeal. The merits of the grounds for divorce are not before us for consideration.

The respondent, a veterinarian, and the appellant had been married twenty-four years. They had four children, and the two youngest children, ages fourteen and seventeen, were living at home at the time the divorce judgment was entered on September 5, 1975.

The appellant had worked as a clerk-typist for six years prior to the marriage. At the time they were married, the respondent had a bachelor of science degree and the appellant had completed her second year in college. For the first five years of the marriage, the respondent attended Cornell University School of Veterinary Medicine. The appellant worked as a secretary to a Cornell research scientist for almost a year, until the birth of their first child. After the birth, she taught art to faculty members' children for a couple months. Since she did not have a teaching certificate she was hired under the school's hot lunch program and was paid accordingly. While living in Ithaca she also worked for a rural radio network for five months. At one point she held three jobs, full time at the New York State Power Authority, Friday evenings and Saturdays at a dress shop and odd hours at a flower shop.

They moved to La Crosse in 1962 or 1963. In La Crosse, she worked for several summers for the Coulee Region of Fine Arts summer art show and was paid $100 for three weeks' work each summer. She also had done

some decorating work, but apparently this endeavor was not profitable.

Since 1966, the appellant had been attending Viterbo College part time pursuing a degree in art education. She was a first-semester senior at the time of the hearing and estimated that at her present rate of study it would take another three to four years to earn her degree. This degree would qualify her to teach art at the primary and secondary school levels.

During the years immediately preceding the divorce the respondent had given the appellant $1,000 per month for household expenses and utilities. The temporary order for support pending the divorce required him to pay her $1,050 per month. At the time of trial she submitted an annual budget of approximately $12,000 which figure did not include her college tuition. It appears the respondent has at all times paid the mortgage payments and the taxes on the real estate owned by the parties.

The adjusted gross income of the respondent for the years immediately preceding the divorce approximated $55,000 to $60,000 per year. He expected it to decline because he had taken in an associate. A substantial portion of the assets of the parties consisted of real estate: the house, a veterinary clinic, a small animal hospital, and an undeveloped parcel of real estate. The house, clinic and hospital were subject to a mortgage of approximately $40,000.

Extensive testimony was presented as to the value of the assets and the monthly expenses of the parties. The findings of the trial court on the values of these assets and expenditures are not in dispute and therefore this evidence is not set forth in detail.

The judgment provided that the estate of the parties should be divided on a 50–50 basis; that the house would be sold; and that such a division should be fully accomplished within two years of the date of the judgment. It

further provided that such a division of the estate should be in lieu of alimony.

At the time the trial court entered judgment dividing the estate on a 50–50 basis the estate was valued at $230,352.02, subject to such modification as might be necessary depending upon the net proceeds of the sale of the house. Also, at the time this judgment was entered and as a portion of the appellant's 50 percent of the total estate the trial court awarded her $23,288.90. This sum consisted of the household goods and furniture, her personal effects, an automobile, and the liquid assets of the parties in the amount of $12,788.90.

The foregoing judgment on the division of the estate was entered May 20, 1976. The respondent was to pay $125 per month for each child's support until the two children at home reached the age of eighteen years. The older of the two girls would be eighteen on July 3, 1976. The trial court also ordered the respondent to pay to the appellant $1,000 per month for each month she remained in the home from March through July, 1976. Any payments thus made by the respondent to the appellant were to be charged against her distributive share of the estate. Under the provisions of the judgment each party was responsible for the payment of their respective counsel fees and costs of trial.

Subsequent to the entry of the judgment for division of the estate, the trial court entered an order directing the respondent to pay to the appellant $2,300 toward her legal fees and expenses on this appeal and a further sum of $500 per month temporary support pending appeal. Both of these sums were to be charged against the appellant's share of the property when the specific amount of the appellant's 50 percent of the estate was finally determined and settled.

In support of the motion of the appellant for suit money, counsel fees and disbursements on this appeal and for

temporary alimony during the pendency of the appeal, the appellant filed an affidavit with the trial court. The affidavit is dated November 10, 1976, and states that she would not earn her degree for at least two more years; that because of emotional distress she had been unable to follow up on a job application with the Wisconsin Employment Service; and that the house had been listed for sale but not sold.

The respondent filed a counter-affidavit stating, among other things, that the listing contract for the sale of the house had not been signed until October, 1976; that he had continued to make the mortgage payments; and that the youngest daughter was then living with him because of a disagreement between the daughter and her mother. At oral argument this court was advised the house had been sold.

The issues to be resolved on this appeal are whether the trial court abused its discretion:

1. In making a division of the property in lieu of alimony;

2. In providing that $2,300 payment of appellant's counsel fees and expenses of this appeal and $500 per month alimony pending appeal by the respondent to the appellant should be charged against her 50 percent share of the estate; and

3. In providing that full and final division of the property between the parties on the basis of 50–50 should be accomplished within two years of the May 20, 1976, judgment.

The appellant contends the trial court failed to give appropriate consideration to her needs when contrasted to the position of the respondent. She argues that by failing to consider the fact she had no income and would not be employable for at least a year, the trial court unreasonably caused her to live off her principal and therefore abused its discretion. Dr. Pauline Jackson, appel-

lant's psychiatrist, testified as to her emotional state and employability. This testimony will be further considered in this opinion.

The respondent contends that the trial court properly considered all relevant factors, including the testimony of Dr. Jackson, and therefore did not abuse its discretion. The respondent also argues that the property division on a 50–50 basis was fair and reasonable and amply provided for the needs of the appellant. It is well established that alimony and division of property are matters within the discretion of the trial court so the trial court's decision on them will not be disturbed unless an abuse of discretion is shown. *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 89, 90, 248 N.W.2d 417 (1977). An abuse of discretion exists where the trial court has made a mistake of fact, or an error in computation, or the property division is excessive or inadequate. *Id.* at 83, 84. A failure to consider the relevant factors is also an abuse of discretion. *Id.* at 90. The same factors are to be considered in reaching a decision on alimony and property division. *Id.* at 90, *Tonjes v. Tonjes,* 24 Wis.2d 120, 125, 128 N.W.2d 446 (1964). These factors are the length of the marriage, the age and health of the parties, the ability of the parties to support themselves, their liability for debts and the support of children, other circumstances such as misconduct, whether the property division is in lieu of or in addition to alimony, the amount of the wife's separate estate and the need to set aside property for the children's needs. *Lacey v. Lacey,* 45 Wis.2d 378, 383, 384, 173 N.W.2d 142 (1970). For alimony the court is to specifically consider the needs of the wife and the husband's ability to pay. *Bussewitz, supra,* at 90.

Both parties discuss *Parsons v. Parsons,* 68 Wis.2d 744, 229 N.W.2d 629 (1975), a case which has some factual similarities to the present case. However, the is-

sues presented in *Parsons* were somewhat different. The trial court had made errors in computing the property division and had awarded the wife only 40 percent. This court raised her share to 48 percent. This court also granted her a $2,000 allowance for trial attorney's fees. The case can be distinguished, however, because there were no facts given regarding the wife's employability. She was awarded alimony of $800 per month, apparently so she could remain at home to care for a twelve-year old daughter.

No contention is made that the property division itself is excessive or inadequate, or that it was based on inaccurate data. This court approved equal property divisions for long marriages in *Lacey, supra.* Such a division is appropriate in this case. The appellant's objections to the judgment center on the trial court's finding that she would be employable by October, 1976, and the denial of alimony. The court made the following finding:

"4. The Court finds that the Defendant, Olive A. M. Van Wyk, is not employed and has no earnings, in the course of the divorce and up to the time of the hearing on October 17, 1975, and that she has no separate income, and that Court further finds that after considering the testimony of all of the witnesses, the Defendant, and particularly the testimony of Dr. Pauline M. Jackson, and after considering the testimony of all witnesses most favorable to the Defendant, that it is probable that the Defendant will be capable of gainful employment and employable within one (1) year of October 17, 1975."

The appellant's testimony regarding her progress toward her degree and of her attempts to secure work has been set forth. The only other testimony regarding her employability was given by her psychiatrist, Dr. Pauline Jackson.

Dr. Jackson testified that she had been seeing the appellant once a month since February, 1975. She said the appellant suffered from anxiety and depression and that

she could not predict when these problems would be sufficiently alleviated so the appellant could be employed. She said she doubted the appellant would be able to go back to clerk-typist work because it had been so long since she had done that work and because she probably lacked the patience to do that kind of work. She said she thought the appellant might be emotionally stable enough to teach in a year. Generally, Dr. Jackson was reluctant to state when the appellant would be able to seek employment because she had only seen her at a high anxiety level and it was difficult to predict from these visits when she would be able to work. She agreed the appellant would be able to teach art on a limited basis, perhaps an hour a day, if she had a teacher's certificate. In response to a question from the court, Dr. Jackson said she thought most of the appellant's problem was out of her control and that she was not malingering.

The division of estate and alimony award are closely related. *Johnson v. Johnson,* 78 Wis.2d 137, 145, 254 N.W.2d 198 (1977). The trial court did not prepare a memorandum decision in this case. The findings of fact and conclusions of law provide the only basis of the trial court's reasoning for the conclusions it reached. It can be inferred from the findings that future employability of the appellant was its reason for denying alimony. However, we can find nothing in findings of the trial court or in the record to support its determination that the distributive share of the marital estate of the appellant should be charged with the payments made to her by the respondent or for not holding the matter of future payment of alimony open. We conclude the failure of the trial court to explain its determination constituted an abuse of discretion. No reasons are stated for charging her share of the marital estate with the payments made to her by the respondent and no reasons are stated for

not holding the question of payment of alimony open for possible future determination based upon changing circumstances of the parties. We find none in the record.

The judgment of the trial court provided that the property division was to be in lieu of alimony. The trial court also ordered that the respondent pay to the appellant $1,000 per month for each month she remained in the home from March through July, 1976, and that such payments be charged against her share of the marital estate. No reason is stated for causing the appellant to thus invade her distributive share of the marital estate. We are of the opinion that the judgment should be modified to provide that the question of possible future payment of alimony be held open. Further we conclude that it was an abuse of discretion to order that the appellant's portion of the marital estate be charged with such payments of $1,000 a month as might be made by the respondent to the appellant for each month she remained in the house from March through July, 1976.

December 8, 1976, the trial court entered an order directing the respondent to pay the appellant the sum of $2,300 toward her legal fees and expenses on appeal and a further sum of $500 a month, commencing January 1, 1977, for temporary allowance pending appeal. This order was entered after this appeal had been perfected. All sums paid by the respondent to the appellant pursuant to this order were to be charged against her 50 percent portion of the marital estate. Absolutely no reason is given for surcharging her share of the property settlement with the payment of these sums by respondent. In reality the payment of these sums by the respondent is nothing more than partial settlement of the division of the marital estate. Except for the payment of interest the respondent could just as well have borrowed

the money from a third party. We deem it an abuse of discretion to surcharge the distributive share of the marital estate of the appellant with the advancement of funds paid by the respondent pursuant to the December 8, 1976, order of the trial court. Any sums paid by the respondent to the appellant pursuant to that should not be charged against her share of the property division and to that extent the judgment and order of the trial court is modified.

This is a marriage of twenty-four years' duration. From its very inception the appellant has been a vital part of the development of the respondent's career as a veterinarian. Both because of present health problems and her activities of the last twenty-four years she is unprepared to presently support herself. She is fifty-three years of age and what secretarial skills she might have had twenty-four years ago are not presently marketable. Four children were born of this marriage, three of them now adults. During the years of the marriage the primary energies of the appellant were directed to being the wife of a professional man and to raising their children. She testified she had been active, to the point of accepting office, in the women's auxiliaries of the respondent's professional societies and other activities related to his profession.

The appellant is, in effect, arguing that the trial court did not in any way enunciate consideration of the following standards as given in the new family code:

"247.26   **Alimony, property division**
"(1) Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 247.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either part for a limited or indefinite length of time after considering:
  "(a) . . .
  "(b) . . .
  "(c) . . .

"(d) The educational level of each party at the time of marriage and at the time the action is commenced.

"(e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal."

Former sec. 247.26, Stats., was repealed and the above section was created by ch. 105, section 42 of the Laws of 1977. The new section became effective on February 1, 1978, subsequent to the judgment under consideration here. The factors listed include factors long-recognized as relevant by this court. *Lacey, supra.* These standards are designed to provide equity in precisely the situation presented by the instant record.

On the facts of this case and the record before us, the division of property was fair and equitable. Each case must be considered on its own merits. Considering all the facts of this case, the difficulty arises in the determinations of the trial court which have the effect of requiring the appellant to invade the corpus of her divisional share of the marital estate to support herself during the period of time when the house was sold and the failure to make any provisions for reasonable expenses necessary to acquire sufficient education or training for the appellant to find appropriate employment. We do not believe that requiring the respondent to make advancements to appellant which are to be charged against her share of the property settlement constitute the making of such provisions. This is particularly so when the

record is silent as to any reason for the decision of the trial court to make such payments a charge against her share of the property division.

The respondent also argues that the trial court abused its discretion in ordering that the full and final division of the property between the parties on a 50–50 basis should be accomplished within two years of May 20, 1976, judgment. It is emphasized that this is especially so, since no security was provided for making such settlement. We do not agree with these assertions. The trial court granted the appellant immediate availability of the cash assets of the parties. The parties had been residents of La Crosse for nearly twenty years. A substantial portion of their assets consisted of real estate holdings: The veterinarian clinic and small animal hospital and a parcel of undeveloped real estate. The house was valued at $77,000 by one appraiser and $99,000 by another. It was to be sold. The three properties were subject to a $40,000 mortgage. It is obvious that in order to effectuate a 50–50 property division between the parties, some plan had to be developed to make the assets available to the appellant. It is our conclusion that the judgment providing for a period of not to exceed two years to complete the actual division of the marital estate on a 50–50 basis was entirely reasonable and not an abuse of discretion.

The parties also discuss a $5,000 gift the respondent gave their oldest daughter as a wedding present during the divorce proceedings. Appellant contends it should be assessed against respondent's share of the property division. In *Parsons, supra,* the husband transferered $5,000 to his mother where it was unclear that there actually was a debt. In *Caldwell v. Caldwell,* 5 Wis.2d 146, 92 N.W.2d 356 (1958), the husband transferred over half

his assets, without consideration, to his son by a former marriage. In the case before us, the parties had previously given their son $5,000 as a wedding gift. There is nothing in the record to indicate that doing the same for their oldest daughter is unreasonable or constituted a fraudulent transfer.

In conclusion, the judgment of May 20, 1976, which provided that the respondent pay to the appellant $1,000 per month for each month the appellant remained in the house from March through July, 1976, and that any payments thus made be charged against the 50 percent share of marital estate is modified. It is modified to the extent that such payments shall not be charged against the appellant's share of the marital estate but rather that such payments be considered payments of temporary support.

We deem it further necessary to modify the provisions of the December 8, 1976, order which provided for a temporary allowance of $500 a month to be paid by the respondent to the appellant during the pendency of appeal; such payments to commence January 1, 1977, and be charged against the appellant's 50 percent share of the property division. The order is modified to provide that such payments shall not be considered a charge against the property division share of the appellant. These payments are to be considered temporary support payments and are to terminate upon remand.

The December 8, 1976, order also provided for the payment of $2,300 for legal fees and expenses of the appellant on appeal by the respondent and that such payment be charged against the appellant's share of the property. The order is modified to provide that the payment of $2,300 made by the respondent for legal fees and ex-

penses of the appellant on appeal shall not be charged against the appellant's share of the property division.

We further concluded that the judgment should be, and it is, modified to provide that matter of alimony be held open and that the trial court retain jurisdiction to make such further determination of alimony award as the circumstances of the parties require.

*By the Court.*—Judgment modified, and cause remanded for further proceedings.